# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| SHELI MYERS, as guardian of M.M., a minor, | CASE NO. 4:21-cv-2048 |
| PLAINTIFF, | JUDGE SARA LIOI |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| BOARDMAN LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al., | |
| DEFENDANTS. | |

Before the Court are (1) the motion of defendant Patricia Passarelli ("Passarelli") to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) all of plaintiff Sheli Myers' ("Myers") claims against her (Doc. No. 9); and (2) the motion of defendant Kieran Curl ("Curl") for partial judgment on the pleadings (as to the first and third claims) pursuant to Fed. R. Civ. P. 12(c) (Doc. No. 14).[1] Myers filed a brief in opposition to Passarelli's motion. (Doc. No. 11.) Passarelli filed a reply in further support of her motion. (Doc. No. 12.) Myers also filed a brief in opposition to Curl's motion (Doc. No. 15) and Curl filed a reply (Doc. No. 16). For the reasons set forth herein, Passarelli's motion to dismiss is granted in part and denied in part; Curl's motion for judgment on the pleadings is granted. The first and third claims in the complaint are dismissed as to *all* defendants, even the non-moving defendant. The case will proceed as to the second, fourth, fifth, sixth, and seventh claims.

---

[1] Any page number references herein will be to the consecutive page numbers applied to each individual document by the electronic filing system, a citation practice recently adopted by this Court despite a different directive in the Initial Standing Order for this case.

I. **Procedural Background**

On October 29, 2021, Myers filed her complaint for damages against the Boardman Local School District Board of Education (the "Board"), Curl, and Passarelli, asserting the following seven claims for relief (four federal claims and three state claims): (1) against Curl and Passarelli under 42 U.S.C. § 1983 for excessive force and unlawful seizure in violation of the Fourth Amendment; (2) against Curl and Passarelli under 42 U.S.C. § 1983 for denial of substantive due process in violation of the Fourteenth Amendment; (3) against Curl and Passarelli under 42 U.S.C. § 1983 for denial of equal protection in violation of the Fourteenth Amendment; (4) against the Board under 42 U.S.C. § 1983 for failure to train and supervise and for unconstitutional customs, policies, and practices causing constitutional violations; (5) against Curl for assault and battery; (6) against Curl for intentional infliction of emotional distress; and (7) against the Board and Passarelli for wanton and reckless hiring, retention, and supervision. (*See* Doc. No. 1, Complaint.)

The Board filed its answer. (Doc. No. 10.) Curl filed her separate answer (Doc. No. 8) and, two months later, filed her motion for partial judgment on the pleadings (Doc. No. 14). Passarelli filed only her motion to dismiss, with no accompanying answer. (Doc. No. 9.)

II. **Standard of Review**

The standard for both a Rule 12(b)(6) motion and a Rule 12(c) motion is the same. *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Id*. at 555 (citing authorities).

"'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).

"In ruling on a Rule 12(c) motion, the court considers all available pleadings, including the complaint and the answer." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citation omitted). "The court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Id.* (citations omitted).

**III. Discussion**

    **A. Factual Allegations**

Myers is the mother and legal guardian of M.M., an eleven-year-old child who attends school at Boardman Center Intermediate School within the Boardman Local School District. M.M. is affected by an autism spectrum disorder and other learning disabilities, including attention deficit hyperactivity disorder, obsessive compulsive disorder, anxiety, and dyslexia. (Doc. No. 1

¶¶ 4, 13–14.) Passarelli was a teacher employed by the Board and working at M.M.'s school; she was an intervention specialist, teaching a class of children with special needs, learning disabilities, and/or autism spectrum disorders. (*Id.* ¶ 10.) Curl was a classroom aide employed by the Board; she was working at M.M.'s school, providing services in Passarelli's classroom. (*Id.* ¶¶ 8, 11.) The complaint alleges that Passarelli was Curl's direct supervisor (*id.* ¶ 11), which Passarelli accepts as true only for purposes of her Rule 12(b)(6) motion, but otherwise denies (*see* Doc. No. 9 at 3 n.1). Both Passarelli and Curl are being sued in their individual capacities, as "persons" who were "acting under color of law" within the meaning of Section 1983. (Doc. No. 1 ¶¶ 8–10, 12.)

The complaint outlines several incidents of alleged mistreatment of M.M. by Curl:

(1) On September 20, 2020, when Passarelli was out of the classroom and the students were under the sole supervision of Curl, Curl "began yelling at and belittling M.M. and another special needs student, shouting, among other things, that 'Mrs. Passarelli doesn't deserve you two and you don't even belong here!'" This caused the two students to "cry[] hysterically." (*Id.* ¶¶ 19–21). Myers contacted Passarelli, who confirmed that she had observed M.M. crying; Passarelli assured Myers that she would "put an end to . . . Curl's behaviors." (*Id.* ¶¶ 22–23.)

(2) On October 5, 2020, Curl "became verbally abusive with M.M. again, causing him to cry in front of the other students in class." Myers contacted Passarelli, who "apologized" and "promis[ed] again to speak with [Curl]." (*Id.* ¶¶ 25–26.)

(3) On October 20, 2020, Curl yelled at M.M.: "If you don't do your homework, I'll put you on the side of the road!" After school, M.M. reported this to Myers, who contacted Passarelli. Passarelli confirmed the incident but "defended [Curl] . . . , claiming she was only joking." Myers explained that, due to his autism, M.M. "did not understand jokes like that, could not comprehend sarcasm, and took the statements of his teachers literally." Passarelli again agreed to "discuss this" with Curl. (*Id.* ¶¶ 27–29.)

(4) In late October 2020, "on several different occasions, [Curl] struck M.M. on the head and made demeaning comments to him . . . to reprimand or correct him." Each time Curl stated: "You know I'm just joking; don't tell your mom!" Myers discussed each incident with Passarelli, but they "continued to occur." (*Id.* ¶¶ 30–31.)

4

(5)  On November 11, 2020, while two other boys in the class were fighting, M.M. "was punched in the face." Although he was exonerated, the next day, "Curl singled out M.M., took him out of class into the hallway, yelled at him, and called him a liar." (*Id.* ¶ 32.)

(6)  On another occasion later in 2020, Passarelli "proactively called" Myers to inform her that M.M. would likely be upset after school because, while Passarelli was out of the classroom, "Curl became very angry with M.M. and two other boys for not returning from recess fast enough[,]" and "screamed at the boys until all three were 'hysterically crying'" when Passarelli returned. (*Id.* ¶ 33.)

(7)  On other occasions, "Curl would also threaten M.M. by saying, 'Don't make me go and get my hammer out of my trunk!' and 'Don't make me get my bungee cord out of the trunk, tie you to it, and drive!'"—each time warning M.M. that she was "joking" and that he should neither "tell [his] mom[]" nor "go running and crying to Mrs. Passarelli!" (*Id.* ¶ 34.)

These incidents of alleged abuse culminated in the events of January 19, 2021, which form the primary factual basis for the claims in the complaint. On that day, as he often did, M.M. approached Curl to request cold water, which, according to Passarelli's explanation to Myers, caused Curl to "bec[o]me angry" because she "believ[ed] M.M.'s mother should [send] him to school with his own water." Passarelli was out of the classroom at the time. After M.M. returned to his desk, Curl "walked up behind M.M. holding a stapler and a note for M.M.'s mother stating" that she should send him to school with his own bottled water, especially on days when there was gym class. (*Id.* ¶¶ 35–39 (emphasis omitted).) When Passarelli returned to the classroom, she "found M.M. in distress and immediately noticed the large, yellow note attached to M.M.'s head." Passarelli "dug the staples out of M.M.s head and removed the note." (*Id.* ¶¶ 42–43.) Passarelli did not, however, report Curl's action to anyone at that time, including Myers. (*Id.* ¶ 44.) After school, when M.M. told his mother about the incident, Myers "observed the wounds the staples had made in her son's head." (*Id.* ¶ 45.) Myers immediately called Passarelli "who admitted that she was

5

aware of the incident and confirmed that she personally 'dug' the staples out of M.M.'s head." (*Id.* ¶ 46.) It should be noted that Passarelli admits only for purposes of the motion that the note was stapled to M.M.'s head and that she personally dug the staples out. She otherwise denies this, asserting that the note was only stapled to M.M.'s hair. (Doc. No. 9 at 3 n.1; *see also* Doc. No. 1 ¶ 50.)

Although Passarelli assured Myers once again that she would "handle the incident[,]" since Passarelli had never followed through after any previous incident to "stop[] . . . Curl's continuing abuse, . . . and because of the outrageous nature of the abuse, [Myers] brought the incident to the attention of [the Board] herself." (Doc. No. 1 ¶ 47.) The Board "gave [Curl] a 'warning' and allowed her to return to the classroom." (*Id.* ¶ 48.)

Myers alleges that Passarelli "condoned, encouraged, ratified, knowingly acquiesced to, and/or approved of all of [Curl's] abuse of M.M., [as] described above." (*Id.* ¶ 49.) Although admitting that this is taken as true for purposes of her motion, Passarelli otherwise denies that she had any control over Curl's behavior and/or that she condoned any alleged abuse. (Doc. No. 9 at 3 n.1.)

### B. Analysis

In her Rule 12(b)(6) motion, Passarelli argues that Myers fails to state any claim under 42 U.S.C. § 1983 and that her state law claim fails because Passarelli and Curl had no employment relationship. In her Rule 12(c) motion, Curl asserts that she is entitled to judgment on the pleadings on the first and third claims for the same reasons argued by Passarelli.

### 1. Failure to State § 1983 Claim(s)

"To state a claim under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or a federal statute has been violated and (2) the violation was committed by a person

6

acting under color of state law." *Jordan v. Stroughter*, No. 21-1204, 2022 WL 620119, at *2 (6th Cir. Feb. 23, 2022) (citing *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)).

### a) First Claim — Fourth Amendment Excessive Force

Myers' first claim for relief alleges that Curl used excessive force against M.M. in violation of the Fourth Amendment (Doc. No. 1 ¶ 53); that Passarelli authorized, condoned, failed to intervene, and knowingly acquiesced in Curl's conduct (*id.* ¶ 57); and that a reasonable teacher in Passarelli's position would have known that the use of force at issue violated M.M.'s clearly established Fourth Amendment right to be free from excessive force and unreasonable searches and seizures (*id.* ¶ 58).[2]

Passarelli argues that the Sixth Circuit has repeatedly held that a student's claim of excessive force by a teacher is properly analyzed under the Fourteenth Amendment, rather than under the Fourth Amendment. (Doc. No. 9 at 7 (citing, among other cases, *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 724–25 (6th Cir. 1996) (holding that claims that a teacher had slapped one student and sexually harassed two others implicated the Fourteenth Amendment's substantive due process and its shocks-the-conscience standard, not the Fourth Amendment's excessive force or search/seizure)).)

Myers concedes that "a Fourth Amendment excessive force claim may be duplicative when asserted alongside a Fourteenth Amendment substantive due process claim." (Doc. No. 11 at 1 n.1 (citing *Kouider on behalf of Y.C. v. Parma City Sch. Dist. Bd. of Educ.*, 480 F. Supp. 3d 772, 784–85 (N.D. Ohio 2020) (holding that "[w]here plaintiffs have brought both Fourth Amendment

---

[2] There are no allegations in the complaint that suggest any "search" or "seizure."

excessive force claims and Fourteenth Amendment substantive due process claims, courts have dismissed the Fourth Amendment claims as duplicative[]") (citing cases)).)

Therefore, the first claim in Myers' complaint is dismissed as to *all* defendants, including the non-moving Board. To that extent, both motions are granted.

### b) *Second Claim — Fourteenth Amendment Substantive Due Process*

The second claim in Myers' complaint alleges that M.M. has the constitutional right to personal security and bodily integrity and to be free from arbitrary governmental conduct that lacks all socially redeeming value. (Doc. No. 1 ¶¶ 62–63.) It further alleges that Curl's conduct, which allegedly was authorized, condoned, and acquiesced to by Passarelli, violated those rights in a manner that shocks the conscience. (*Id.* ¶¶ 65–66.)

Passarelli denies she was Curl's supervisor but argues, in any event, that an alleged supervisor cannot be liable under § 1983 for a subordinate's conduct solely on the basis of respondeat superior. (Doc. No. 9 at 8 (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) ("§ 1983 liability of supervisory personnel must be based on *more than the right to control employees*[]" (emphasis added in motion) and there "must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it[]")).) Passarelli argues that, to be liable, a supervisor must be on notice of misconduct and in some way supportive of the misconduct. (*Id.* (citing *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) (mere awareness of alleged harassment and failure to take appropriate action is insufficient to impose supervisory liability under § 1983)).) Passarelli asserts that Myers' allegation that Passarelli was aware of several prior incidents of Curl's *verbal* abuse of students (including M.M.) and of *one* instance where Curl hit M.M. in the head, but that she failed to act to stop such abuse is insufficient to establish the requisite widespread, obvious, flagrant, rampant, and/or continued

8

duration to show a substantive due process violation by Curl that can be imputed to Passarelli. In addition, since there is no dispute that Passarelli was not present during any of the incidents, especially the January 19, 2021 incident, Passarelli argues that she cannot be found to have actually participated in any violation. (Doc. No. 9 at 10.)

In opposition, Myers argues that, in addition to Passarelli's knowledge of all the incidents of verbal and physical abuse and her failure to stop them despite Myers' complaints, Passarelli also "failed to report the incident to law enforcement, the school administration, or [p]laintiff[,]" and "took affirmative steps to cover-up [sic] [Curl's] abuse." (Doc. No. 11 at 2 (citing *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (recognizing that alleged failure to report, coupled with an attempt to cover up, was sufficient to support a claim for supervisory liability under § 1983)).)

In reply, Passarelli argues that *Bass* is distinguishable because it was decided on summary judgment and because the use of excessive force and subsequent supervisory failure to act occurred in the presence of the supervisor. (Doc. No. 12 at 3–4.) Passarelli continues to insist that the complaint does no more than allege Passarelli's *awareness* of Curl's behavior (which Passarelli argues did not exhibit a "history of widespread abuse" that would have put her on notice), and fails to allege any more than possible negligence, which is insufficient to establish supervisory liability. (*Id*. at 3.)

Passarelli does not address the allegations that she initially admitted to Myers "that she was aware of the [January 19] incident and confirmed that she personally 'dug' the staples out of M.M.'s head[,]" but then "covered up and failed to report" Curl's behavior and "would later falsely claim that [Curl] only stapled M.M.'s hair, not his head." (Doc. No. 1 ¶¶ 46, 50.) Nor does

9

Passarelli explain how this could not be construed as the type of active involvement in the alleged excessive force that would be sufficient to state a claim.

The Court concludes that, when the facts are considered in a light most favorable to Myers, the complaint includes sufficient allegations to withstand the motion to dismiss on the second claim. To that extent, therefore, Passarelli's motion is denied.

### c) Third Claim — Fourteenth Amendment Equal Protection

The third claim in Myers' complaint alleges that Passarelli (and Curl) "treated M.M. differently than other similarly situated students who did not have disabilities or special needs[,]" and "singled [him] out for mistreatment because of his disabilities and special needs." (Doc. No. 1 ¶¶ 71–72.) Myers alleges that Curl's conduct was "intentional, malicious, and discriminatory" and that it was authorized, condoned, and acquiesced to by Passarelli. (*Id.* ¶ 74.) Myers alleges that this discriminatory treatment violated M.M.'s right to equal protection and that the behavior "was extreme, outrageous, and shocks the conscience." (*Id.* ¶¶ 74–75.)

To prevail on this equal protection claim, Myers has "'the burden of showing that [the defendants] intentionally treated [M.M.] differently—because he is disabled—than similarly situated students who were like him in all relevant respects.'" *Gohl v. Livonia Pub. Schools Sch. Dist.*, 836 F.3d 672, 684 (6th Cir. 2016) (quoting *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 458 (6th Cir. 2008)).

Passarelli argues that there are no facts alleged to show that M.M. was treated differently because of his disability and, in fact, Myers acknowledges that M.M. required, and was placed in, special education classes where all of the students had disabilities and/or special needs. (Doc. No. 9 at 10–11.) In opposition, Myers claims that the different treatment was the fact that M.M. was the only student, disabled or otherwise, who had a note stapled to his head. (Doc. No. 11 at 7.)

Myers further argues that a reasonable inference of discrimination on the basis of disability can be drawn from the history of Curl's mistreatment of M.M. and Passarelli's alleged condoning of that treatment. (*Id*. at 7–8.)

Myers' reliance on ¶ 71 of the complaint, alleging that defendants "treated M.M. differently than other similarly situated students who did not have disabilities or special needs[,]" is misplaced. This is not a "fact." It is no more than a conclusory allegation. There are simply *no* facts in the complaint identifying any similarly situated students or any circumstances where such students were treated differently than M.M. Even accepting as true that M.M. had a note stapled to his head, that does not automatically mean it was *because of* his disability.

The complaint fails to state a claim under § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment. Therefore, the third claim for relief is dismissed as to *all* defendants, including the non-moving Board. To that extent, both motions are granted.

### 2. *Seventh Claim — Wanton and Reckless Hiring, Retention, and Supervision*

In her seventh claim for relief, Myers alleges that Passarelli was Curl's "direct supervisor" and that Passarelli (along with the Board) "had a duty to exercise reasonable care in hiring, retaining, and supervising their employees and direct reports." (Doc. No. 1 ¶¶ 96, 98.) Myers claims that "[b]y failing to supervise, discipline, or terminate [Curl] after her repeated mistreatment and abuse of M.M., [the Board] and Passarelli wantonly and recklessly disregarded the great probability of substantial harm that would befall M.M. . . ." (*Id*. ¶ 103.)

"The elements of a claim for negligent hiring, supervision, and retention are (1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's knowledge of the employee's incompetence, (4) the employee's act or omission causing the plaintiff's injuries, and (5) a causal link between the employer's negligence in hiring, supervising,

11

and retaining and the plaintiff's injuries." *Lehrner v. Safeco Ins./Am. States Ins. Co.*, 872 N.E.2d 295, 305 (Ohio Ct. App. 2007).

Passarelli argues that she was not Curl's employer and, therefore, cannot be liable for negligent supervision of Curl. (Doc. No. 9 at 12.) In opposition, Myers argues that, although Passarelli did not have the authority to hire or fire Curl, she did have the responsibility to supervise her in the classroom. (Doc. No. 11 at 8–9 (citing *Doe v. Roman*, No. 2001-AP-05-0044, 2002 WL 31732468 (Ohio Ct. App. Dec. 4, 2002)).) Passarelli argues in reply that *Doe v. Roman* is inapplicable because the court therein failed to conduct an "analysis of the actual elements for a 'reckless supervision' claim[.]" (Doc. No. 12 at 7.)

The complaint alleges that Passarelli was the "direct supervisor" of Curl, which Passarelli accepts as true for purposes of this motion, but otherwise denies. In her reply, Passarelli repeats the argument that she was not Curl's employer and, therefore, had no duty to supervise. But the Court will not make that determination at this juncture, concluding that it may very well be dependent upon Ohio statutes governing schools and their operation and/or the Board's particular policies governing Boardman Local Schools and the responsibilities of various employees. It is well within the realm of possibility that a classroom aide, although hired/fired by the Board, is nonetheless under the day-to-day supervision of the teacher(s) within whose classroom(s) the aide serves, in much the same way that the principal, who typically does not hire/fire teachers, nonetheless has some responsibility for supervision of the teachers.

At this juncture, the allegations in the seventh claim of the complaint are sufficient to withstand a motion to dismiss. To that extent, Passarelli's motion is denied.

### IV. Conclusion

For the reasons set forth herein, the first and third claims in Myers' complaint are dismissed as to *all* defendants (including the Board) and, to that extent only, both Passarelli's motion and Curl's motion are granted. The case will proceed as to the second, fourth, fifth, sixth, and seventh claims in the complaint.

The Court will, by separate order, schedule the Case Management Conference.[3]

**IT IS SO ORDERED**.

Dated: July 11, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[3] Passarelli is reminded that she has not filed an answer and should do so within the time provided by the Civil Rules of Procedure.