# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| SHELI MYERS, as guardian of M.M., a minor, | ) ) ) ) | CASE NO. 4:21-cv-2048 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| BOARDMAN LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al., | ) ) ) ) | |
| DEFENDANTS. | ) | |

Before the Court are two motions under Fed. R. Civ. P. 12(c): (1) the motion of defendant Patricia Passarelli ("Passarelli") for partial judgment on the pleadings with respect to plaintiff Sheli Myers' ("Myers") seventh claim for relief (Doc. No. 22); and (2) the motion of defendant Boardman Local School District Board of Education (the "Board") for partial judgment on the pleadings with respect to Myers' fourth and seventh claims for relief (Doc. No. 23).[1] Myers filed a corrected brief in opposition to Passarelli's motion (Doc. No. 26) and Passarelli filed a reply (Doc. No. 28). Myers also filed a brief in opposition to the Board's motion (Doc. No. 27) and the Board filed a reply (Doc. No. 29). For the reasons set forth herein, the Board's motion is granted and Passarelli's motion is granted in part and denied in part.

---

[1] Any page number references herein will be to the consecutive page numbers applied to each individual document by the electronic filing system, a citation practice recently adopted by this Court despite a different directive in the Initial Standing Order for this case.

I. **Procedural Background**

On October 29, 2021, Myers filed her complaint for damages against the Board, Passarelli, and Kieran Curl ("Curl"), asserting four federal claims and three state claims as follows: (1) against Curl and Passarelli under 42 U.S.C. § 1983 for excessive force and unlawful seizure in violation of the Fourth Amendment; (2) against Curl and Passarelli under 42 U.S.C. § 1983 for denial of substantive due process in violation of the Fourteenth Amendment; (3) against Curl and Passarelli under 42 U.S.C. § 1983 for denial of equal protection in violation of the Fourteenth Amendment; (4) against the Board under 42 U.S.C. § 1983 for failure to train and supervise and for unconstitutional customs, policies, and practices causing constitutional violations; (5) against Curl for assault and battery; (6) against Curl for intentional infliction of emotional distress; and (7) against the Board and Passarelli for wanton and reckless hiring, retention, and supervision. (*See* Doc. No. 1, Complaint.)

Curl and the Board filed answers (Doc. Nos. 8 and 10, respectively), but Passarelli initially filed only a motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Doc. No. 9). Curl also filed a separate motion for partial judgment on the pleadings. (Doc. No. 14.) On July 11, 2022, the Court issued a ruling on the two Rule 12 motions, dismissing the first and third claims as to all defendants and directing that the case would proceed as to claims two, four, five, six, and seven. Subsequently, Passarelli filed her answer to the complaint. (Doc. No. 21.)

Also on July 11, 2022, the Court issued a case management conference ("CMC") scheduling order, setting the CMC for September 14, 2022. After the instant motions for partial judgment on the pleadings were filed and a separate motion to stay discovery was granted, the Court canceled the CMC pending briefing and resolution of the instant motions. (*See* Doc. No. 24, Motion to Stay Discovery; Order (non-document) (8/30/22).)

**II.     Standard of Review**

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is assessed under "the same standard that applies to . . . a motion to dismiss under Rule 12(b)(6)." *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021) (quotation marks and citations omitted); *see also E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). To withstand the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citing authorities).

"'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted). "In ruling on a Rule 12(c) motion, the court

3

considers all available pleadings, including the complaint and the answer[s].” *Dudek v. Thomas & Thomas Att'ys & Couns. at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citing Rule 12(c)). "The court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Id*. (citations omitted).

But, "[w]hen a federal court reviews the sufficiency of a complaint, before the reception of any evidence . . . , its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).

**III. Discussion**

    **A.    Factual Allegations** [2]

Myers is the mother and legal guardian of M.M., a child who attends school at Boardman Center Intermediate School within the Boardman Local School District. M.M. is affected by an autism spectrum disorder and other learning disabilities, including attention deficit hyperactivity disorder, obsessive compulsive disorder, anxiety, and dyslexia. (Doc. No. 1, Complaint ¶¶ 4, 13–14.) Passarelli was a teacher employed by the Board and working at M.M.'s school; she was an

---

[2] This recitation of facts is substantially identical to the factual recitation in the Court's July 11, 2022 Memorandum Opinion and Order, with some updated citations to the record.

intervention specialist, teaching a class of children with special needs, learning disabilities, and/or autism spectrum disorders; she was M.M.'s teacher. (*Id.* ¶¶ 10, 15.) Curl was a classroom aide employed by the Board; she was working at M.M.'s school, providing services in Passarelli's classroom. (*Id.* ¶¶ 8, 11.) The complaint alleges that Passarelli was Curl's direct supervisor (*id.* ¶ 11), which Passarelli accepts as true only for purposes of her Rule 12(c) motion, but otherwise denies (*see* Doc. No. 22, at 2). Both Passarelli and Curl are being sued in their individual capacities, as "persons" who were "acting under color of law" within the meaning of Section 1983. (Doc. No. 1 ¶¶ 8–10, 12.)

The complaint outlines several incidents of alleged mistreatment of M.M. by Curl:

(1) On September 20, 2020, when Passarelli was out of the classroom and the students were under the sole supervision of Curl, Curl "began yelling at and belittling M.M. and another special needs student, shouting, among other things, that 'Mrs. Passarelli doesn't deserve you two and you don't even belong here!'" This caused the two students to "cry[] hysterically." (*Id.* ¶¶ 19–21). Myers contacted Passarelli, who confirmed that she had observed M.M. crying; Passarelli assured Myers that she would "put an end to . . . Curl's behaviors." (*Id.* ¶¶ 22–23.)

(2) On October 5, 2020, Curl "became verbally abusive with M.M. again, causing him to cry in front of the other students in class." Myers contacted Passarelli, who "apologized" and "promis[ed] again to speak with [Curl]." (*Id.* ¶¶ 25–26.)

(3) On October 20, 2020, Curl yelled at M.M.: "If you don't do your homework, I'll put you on the side of the road!" After school, M.M. reported this to Myers, who contacted Passarelli. Passarelli confirmed the incident but "defended [Curl] . . . , claiming she was only joking." Myers explained that, due to his autism, M.M. "did not understand jokes like that, could not comprehend sarcasm, and took the statements of his teachers literally." Passarelli again agreed to "discuss this" with Curl. (*Id.* ¶¶ 27–29.)

(4) In late October 2020, "on several different occasions, [Curl] struck M.M. on the head and made demeaning comments to him . . . to reprimand or correct him." Each time Curl stated: "You know I'm just joking; don't tell your mom!" Myers discussed each incident with Passarelli, but they "continued to occur." (*Id.* ¶¶ 30–31.)

5

(5)     On November 11, 2020, while two other boys in the class were fighting, M.M. "was punched in the face." Although he was exonerated, the next day, "Curl singled out M.M., took him out of class into the hallway, yelled at him, and called him a liar." (*Id*. ¶ 32.)

(6)     On another occasion later in 2020, Passarelli "proactively called" Myers to inform her that M.M. would likely be upset after school because, while Passarelli was out of the classroom, "Curl became very angry with M.M. and two other boys for not returning from recess fast enough[,]" and "screamed at the boys until all three were 'hysterically crying'" when Passarelli returned. (*Id*. ¶ 33.)

(7)     On other occasions, "Curl would also threaten M.M. by saying, 'Don't make me go and get my hammer out of my trunk!' and 'Don't make me get my bungee cord out of the trunk, tie you to it, and drive!'"—each time warning M.M. that she was "joking" and that he should neither "tell [his] mom[]" nor "go running and crying to Mrs. Passarelli!" (*Id*. ¶ 34.)

These incidents of alleged abuse culminated in the events of January 19, 2021, which form the primary factual basis for the claims in the complaint. On that day, as he often did, M.M. approached Curl to request cold water, which, according to Passarelli's explanation to Myers, caused Curl to "bec[o]me angry" because she "believ[ed] M.M.'s mother should [send] him to school with his own water." Passarelli was out of the classroom at the time. After M.M. returned to his desk, Curl "walked up behind M.M. holding a stapler and a note for M.M.'s mother stating" that she should send him to school with his own bottled water, especially on days when there was gym class. Curl then "knowingly and maliciously stapled the note directly to the back of M.M.'s head." (*Id*. ¶¶ 35–39.) When Passarelli returned to the classroom, she "found M.M. in distress and immediately noticed the large, yellow note attached to M.M.'s head." Passarelli "dug the staples out of M.M.'s head and removed the note." (*Id*. ¶¶ 42–43.) Passarelli did not, however, report Curl's action to anyone at that time, including Myers. (*Id*. ¶ 44.) After school, when M.M. told his mother about the incident, Myers "observed the wounds the staples had made in her son's head."

6

(*Id*. ¶ 45.) Myers immediately called Passarelli "who admitted that she was aware of the incident and confirmed that she personally 'dug' the staples out of M.M.'s head." (*Id*. ¶ 46.) It should be noted that Passarelli admits only for purposes of the motion that the note was stapled to M.M.'s head and that she personally dug the staples out. She otherwise denies this, asserting that the note was only stapled to M.M.'s hair. (Doc. No. 22, at 4; *see also* Doc. No. 9, Motion to Dismiss, at 3 n.1; Doc. No. 1 ¶ 50; Doc. No. 21 ¶ 13.)

Although Passarelli assured Myers once again that she would "handle the incident[,]" since Passarelli had never followed through after any previous incident to "stop[] . . . Curl's continuing abuse, . . . and because of the outrageous nature of the abuse, [Myers] brought the incident to the attention of [the Board] herself." (Doc. No. 1 ¶ 47.) The Board "gave [Curl] a 'warning' and allowed her to return to the classroom." (*Id*. ¶ 48.)

Myers alleges that Passarelli "condoned, encouraged, ratified, knowingly acquiesced to, and/or approved of all [Curl's] abuse of M.M., [as] described above." (*Id*. ¶ 49.) Although admitting that this is taken as true for purposes of her motion, Passarelli otherwise denies that she had any control over Curl's behavior and/or that she condoned any alleged abuse. (*See* Doc. No. 9, at 3 n.1; Doc. No. 21 ¶ 20.)

    **B.**    **Analysis**

        *1.*    *Section 1983 Claim Against the Board for Failure to Train and Supervise and for Unconstitutional Customs, Policies, and Practices Causing Constitutional Violations (Fourth Claim for Relief)*

The Board seeks judgment on the pleadings in its favor on Myers' fourth claim because Myers has failed to allege "[any] operative facts suggesting the Board knew and tolerated employee misconduct that deprived M.M. of a legally secured right." (Doc. No. 23, at 7.)

7

"To state a claim under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or a federal statute has been violated and (2) the violation was committed by a person acting under color of state law." *Jordan v. Stroughter*, No. 21-1204, 2022 WL 620119, at *2 (6th Cir. Feb. 23, 2022) (citing *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)). As correctly pointed out by the Board, Section 1983 liability cannot be premised on a theory of *respondeat superior*. (Doc. No. 23, at 7–8 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (emphasis in original))).)

A municipality is liable only for its own actions, that is, only where offending conduct occurs pursuant to an "official policy" or custom. *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014). To allege a policy or custom claim for school board liability—a *Monell* claim—Myers must plausibly plead operative facts to show at least one of the following: (1) the existence of an illegal official policy; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance of or acquiescence to federal rights violations. *Id.*; *see also Pembaur v. Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)). "'[T]o satisfy the *Monell* requirements, a plaintiff must identify the policy, connect the policy to the [Board] itself and show that the particular injury was incurred because of the execution of that policy.'" *Wilson v. Trumbull Cnty. Dep't of Job & Fam. Servs.*, No. 4:12-cv-2163, 2013 WL 3776743, at *9 (N.D. Ohio Jul. 17, 2013) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (further citation omitted)), adopting a magistrate judge's report and recommendation to dismiss on a Rule 12(b)(6) motion.

In her complaint, Myers alleges "on information and belief" that:

- the Board's employees "have a known and documented history of violating students' constitutional rights . . . about which [the Board] was aware, to which, however, it was and is deliberately indifferent[]" (Doc. No. 1 ¶ 79);

- the Board "has a pattern and practice of failing to adequately and properly train, supervise, investigate, and punish/reprimand its teachers and teachers' aides on the usual and known recurring circumstances likely to be faced by them . . . , indicating a deliberate indifference to the constitutional rights this pattern and practice was substantially certain to violate[]" (*id.* ¶ 80);

- the Board "promulgated and implemented and/or otherwise condoned and tolerated customs and policies, written and unwritten, for hiring, training, retention, and supervision and investigation of teachers and teachers' aides on the discrimination, abuse, and mistreatment of disabled students that, on their face violate the Fourth and Fourteenth Amendments[] (*id.* ¶ 81);

- the Board "ratified the unconstitutional conduct of [d]efendants Curl and Passarelli against M.M." (*id.* ¶ 82).

Myers has not alleged operative facts showing that the Board had an official policy of discrimination, abuse, or mistreatment of students—nor could she. Myers also has not alleged that any Board member, or other official with decision-making authority (such as an administrator) ratified unconstitutional conduct.[3] Therefore, she has not shown either the first or second possible theories to establish a *Monell* claim.

The gravamen of Myers' allegations in the fourth claim against the Board is that it had either a "policy of inadequate training or supervision" (the third *Monell* theory of liability) or a "custom of tolerance" (the fourth *Monell* theory of liability). The Court will address each.

---

[3] Moreover, any suggestion in the complaint that a teacher, like Passarelli, is an official with final decision-making authority for the Board is simply not true under Ohio law. (*See* Doc. No. 23, at 9 (citing authorities, including public records, statutes, and case law).)

### a. Policy of Inadequate Training or Supervision

Myers alleges that the Board systemically failed to train its employees. As the Supreme Court has noted, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) (citation omitted). Liability can occur only where "such inadequate training can justifiably be said to represent 'city policy.'" *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1980). To establish failure to train, a plaintiff must allege and prove "prior instances of unconstitutional conduct demonstrating that the [Board] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (quotation marks and citation omitted); *see also M.T. v. Benton-Carrol-Salem Loc. Sch. Dist.*, No. 16-cv-2552, 2017 WL 2119346, at *3 (N.D. Ohio May 16, 2017). The complaint here fails in this regard, offering nothing more than conclusory, formulaic allegations. *Twombly*, 550 U.S. at 555.

Myers pleads *no* facts showing prior instances of similar misconduct that would have put the Board on notice as to any deficiency in training or supervision. In fact, the complaint repeatedly alleges that Myers discussed her concerns only with Passarelli (Doc. No. 1 ¶¶ 22, 24, 26, 28, 31, 44), who allegedly "covered up and failed to report" the conduct (*id*. ¶ 50).[4] The first time the Board allegedly had knowledge of any misconduct—that is, after Myers herself reported the January 19, 2021 stapling incident—the Board acted by disciplining Curl. Until that time, the Board's supervision or training of its employees could not, as a matter of law, have caused M.M.'s alleged injury, and the Board's subsequent action with respect to the reported stapling incident

---

[4] There are also *no* allegations suggesting that other students, parents, or staff raised concerns relating to Curl, Passarelli, or any other employee that might have put the Board on notice.

does not show failure to discipline, no matter how much Myers may object to the sufficiency of that discipline.[5]

### b. *Custom of Tolerance (or an "Inaction Theory")*

A *Monell* claim premised on a "custom of tolerance of or acquiescence to federal rights violations" is sometimes referred to as an "inaction theory." *See D'Ambrosio*, 747 F.3d at 387–88. "To state a . . . claim [against a school board] under an 'inaction' theory, [a plaintiff] must establish: (1) the existence of a clear and persistent pattern of [misconduct] by school employees; (2) notice or constructive notice on the part of the School Board; (3) the School Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the School Board's custom was the 'moving force' or direct causal link in the constitutional deprivation." *Doe v. Claiborne Cnty. ex rel. Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996) (citations omitted); *see also Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) ("[A] custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims.").

Myers' fourth claim against the Board fails because, even if one takes as true that Passarelli and Curl engaged in a pattern of abusive behaviors (arguably satisfying the first element set forth in *Claiborne County*, *supra*), the complaint admits that the Board itself had no knowledge of any of those behaviors until after the "stapling" event of January 19, 2021. (Doc. No. 1 ¶ 47.) As already noted in the previous section, by Myers' own admission, she never placed *the Board* on notice *until* the stapling incident. Therefore, the analysis on this theory fails on the element of

---

[5] Myers does not allege that the warning to Curl was in violation of any disciplinary policy of the Board. In fact, since disciplinary policies are commonly progressive in nature, a warning may have been completely appropriate under the circumstances alleged. For purposes of establishing a *policy* of inadequate training or supervision, Myers needs more than her subjective belief that a warning to Curl was an insufficient form of discipline.

11

notice—the second element. The Board cannot have been deliberately indifferent to employee misconduct of which it had no knowledge.

In addition, once Myers reported the stapling incident to the Board, it acted to discipline Curl. A custom of tolerance claim would require a showing that the Board "consciously never acted when confronted with its employees' egregious and obviously unconstitutional conduct." *M.T.*, 2017 WL 2119346, at *3 (citing *Arendale v. City of Memphis*, 519 F.3d 587, 600 (6th Cir. 2008)). Myers cannot show any such conscious failure by the Board to act.

Further, although Myers alleges that, after she finally reported the stapling incident to the Board, it only "gave [d]efendant Curl a 'warning' and allowed her to return to the classroom[,]" (*id*. ¶ 48), that fact, taken as true, does not establish indifference by the Board to Curl's conduct. To the contrary, the Board's "warning" to Curl shows that the Board disapproved of Curl's conduct. Myers' mere subjective disagreement with the sufficiency of the discipline (*i.e.*, the warning to Curl) does not establish any kind of "tacit approval" by the Board for Curl's (or Passarelli's) conduct or misconduct.[6]

The complaint also does not allege any *continued* negative conduct toward M.M. *after* the Board's warning to Curl (and, implicitly, to Passarelli) and that the Board did nothing in response to such continued conduct—which might have been sufficient to show the Board's indifference to a pattern of behavior (if notice to the Board of such continued conduct were also established). In fact, the complaint specifically alleges facts "up to and including" January 19, 2021, and further alleges that "[a]s a result" of such facts, M.M. "has suffered and will continue to suffer [damages]". (Doc. No. 1 ¶¶ 50–51.) As it stands, the complaint simply fails to allege any facts to suggest that

---

[6] *See also* n.5, *supra*.

action or inaction by the Board was the "moving force" behind, or the cause of, any harm to M.M. before January 19, 2021 and/or after Curl was warned. The complaint does no more than offer a "formulaic recitation of the elements" of an "inaction" claim, but fails to back it up with any facts. *Twombly*, 550 U.S. at 555. This, of course, "will not do[.]" *Id*.

The Board's motion for judgment on the pleadings on the fourth claim is granted.[7]

### 2. *Claim Against the Board and Passarelli for Wanton and Reckless Hiring, Retention, and Supervision (Seventh Claim for Relief)*

In her seventh claim for relief, Myers alleges that the Board and Passarelli engaged in wanton and reckless hiring, retention, and supervision. Both defendants move for judgment on the pleadings on this claim.

#### a. *The Board's Motion Regarding Claim Seven*

As the Board points out in its reply brief, Myers failed to offer any argument regarding the Board's motion with respect to this claim and has, therefore, voluntarily abandoned the seventh claim as against the Board. (Doc. No. 29, at 11.) *See Krlich v. Taafe*, No. 4:17-cv-379, 2018 WL 4537196, at *3, n.1 (N.D. Ohio Sept. 19, 2018) ("Because [p]laintiffs failed to meet their burden in opposing judgment on the pleadings on this argument, [p]laintiffs have abandoned this claim and waived any argument concerning dismissal of such claim." (citing cases)); *IUE-CWA v. Gen. Elec. Co.*, No. 4:15-cv-2301, 2017 WL 3219728, at *12 (N.D. Ohio July 28, 2017) (citing *Hicks*

---

[7] In the final sentence of her brief in opposition, Myers "requests leave to file a first amended complaint to address and potentially cure any pleading deficiencies [in the fourth claim] upon good-faith facts and allegations." (Doc. No. 27, at 11.) "A 'bare request' for amendment in an opposition to a motion to dismiss does not constitute a motion to amend." *Justice v. Petersen*, No. 21-5848, 2022 WL 2188451, at *3 (6th Cir. June 17, 2022) (citations omitted); *DePasquale v. Nationwide Mut. Ins. Co.*, No. 21-3467, 2022 WL 1017956, at *6 (6th Cir. Apr. 5, 2022) ("Plaintiffs never filed a proper motion to amend, and a request for leave to amend 'almost as an aside[ ] to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.'" (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000))).

*v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011)); *In re Keithley Instruments, Inc., Derivative Litig.*, 599 F. Supp. 2d 875, 903 n.23 (N.D. Ohio 2008) ("Plaintiffs effectively concede this point by failing to address the Section 14(a) claims in their opposition.").

The Board's motion for judgment on the pleadings in its favor on Myers' seventh claim is granted and, as to the Board, this claim is dismissed.

### b. *Passarelli's Motion Regarding Claim Seven*

Myers alleges that Passarelli "was responsible for supervising both the students and [d]efendant Curl while class was in session." (Doc. No. 1 ¶ 17.) Myers further alleges that Passarelli was Curl's "direct supervisor" and that Passarelli (along with the Board—whose motion on this claim has already been granted) "had a *duty to exercise reasonable care* in hiring, retaining, and supervising their employees and direct reports." (Doc. No. 1 ¶¶ 96, 98 (emphasis added).) Myers also claims that "[b]y failing to supervise, discipline, or terminate [Curl] after her repeated mistreatment and abuse of M.M., . . . Passarelli *wantonly and recklessly* disregarded the great probability of substantial harm that would befall M.M. . . ." (*Id.* ¶ 103 (emphasis added).)

There is nothing other than these bare allegations in the complaint to establish that Passarelli—herself an employee of the Board, just like Curl (*see id.* ¶¶ 8, 10)—had any authority to "hir[e], retain[], . . . discipline, or terminate" Curl that would have given rise to a duty for Passarelli to exercise reasonable care in those regards.[8] Since claim seven is already dismissed as to the Board, all allegations relating to hiring, retaining, disciplining and/or terminating Curl (authority for which resides in the Board) must be considered dismissed and must be disregarded.

---

[8] In its motion, the Board points to Ohio Rev. Code § 3319.081 as authority for its assertion that "only the Board could discipline a classified employee such as a classroom aide under Ohio law . . . ." (Doc. No. 23, at 9 (also citing Ex. A and Ex. B, Board Policies (public records)).) Neither Passarelli nor Myers have mentioned this statute in their briefs.

14

With respect to Passarelli, claim seven can only encompass allegations of failure to *supervise* Curl, "Passarelli's in-classroom aide" (*id*. ¶ 11; *see also id*. ¶¶ 16–17), in a manner that would have protected M.M. from Curl.

In its ruling on Passarelli's earlier Rule 12(b)(6) motion, the Court acknowledged Passarelli's insistence that she had no duty to supervise Curl but noted that, although a classroom teacher does not hire or fire other employees, "[i]t is well within the realm of possibility that a classroom aide . . . is . . . under the day-to-day supervision of the teacher(s) within whose classroom(s) the aide serves[.]" (Doc. No. 18, at 12.)

This issue raised by the Court is not addressed in the briefing with respect to Passarelli's instant motion. Under the applicable legal standard, the Court must accept as true Myers' allegation that Passarelli was Curl's supervisor, unless it is entirely implausible, which cannot be concluded at this juncture. Discovery is needed to determine the scope of Curl's duties, as well as the scope, if any, of Passarelli's responsibilities with respect to Curl within the specific setting of the Boardman schools and the Board's particular policies.

But Passarelli also argues that, even assuming for the sake of argument that she was Curl's supervisor (which she still denies), she is entitled to immunity. Passarelli claims that, as pled in the complaint, claim seven amounts to a claim of negligence—a tort under Ohio law—governed by Ohio Rev. Code Chapter 2744, the Political Subdivision Tort Liability Act.

Chapter 2744 "sets forth a comprehensive statutory scheme for the tort liability of political subdivisions and their employees." *McConnell v. Dudley*, 144 N.E.3d 369, 375 (Ohio 2019) (citation omitted). Determining whether a party is entitled to immunity is a question of law to be determined based on a three-tier analysis. *Pelletier v. City of Campbell*, 109 N.E.3d 1210, 1215–16 (Ohio 2018).

The first tier is the general rule that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1). The second tier provides exceptions to this general immunity, rendering a political subdivision or its employee liable in damages in five specific instances, none of which apply here. Ohio Rev. Code § 2744.02(B). Under the third tier of the analysis, the Court must examine whether any defenses apply. Ohio Revised Code § 2744.03(A).

Passarelli argues that, even if there were an exception to general immunity (which she denies), her conduct was within her discretion as a teacher and would be covered by the fifth statutory defense in Ohio Rev. Code § 2744.03(A)(5). *See Marcum v. Talawanda City Schs.*, 670 N.E.2d 1067, 1070 (Ohio Ct. App. 1996) ("A classroom teacher has wide discretion under [Ohio Rev. Code] 2744.03(A)(5) to determine what level of supervision is necessary to ensure the safety of the children in his or her care." (citations omitted)).

Myers argues, however, that the fifth defense does not apply because of allegations in the complaint that Passarelli, in leaving M.M. with Curl, acted in a wanton and reckless manner, given what she knew about Curl's prior behavior toward M.M. According to Myers, any immunity from liability for negligence that Passarelli might otherwise have enjoyed is eliminated by her acts that were "wanton or reckless[.]" (Doc. No. 26, at 1–2 (citing Ohio Rev. Code § 2744.03(A)(6)(b)).)

The Ohio Supreme Court has stated that "wanton misconduct and reckless conduct are not synonymous with negligence, for which an employee of a political subdivision is immune from liability." *Maternal Grandmother v. Hamilton Cnty. Dep't of Job & Fam. Servs.*, 193 N.E.3d 536, 538 (Ohio 2021) (citing *Anderson v. Massillon*, 983 N.E.2d 266, 273 (Ohio 2012)). "Wanton

16

misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson*, 983 N.E.2d at 273 (citation omitted). "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id*. (citations omitted). "Wanton misconduct and reckless conduct thus involve 'something more than mere negligence.'" *Maternal Grandmother*, 193 N.E.3d at 538–39 (quoting *O'Toole v. Denihan*, 889 N.E.2d 505 (Ohio 2008), syllabus paragraph 3).

Myers argues that determining whether conduct is wanton and/or reckless is usually a jury question. (Doc. No. 26, at 7 (citing cases).) Further, Myers claims that "the [c]omplaint cannot be read in the limited way it is characterized by [d]efendant Passarelli's [m]otion." (*Id*. at 8.) She asserts:

> Defendant Passarelli's failure to supervise [d]efendant Curl over the course of months, during which M.M. endured repeated instances of verbal and physical abuse, about which [d]efendant Passarelli was aware, in addition to leaving Ms. Curl unsupervised on January 19, 2021, serve as an adequate basis from which a reasonable juror could find reckless or wanton conduct.

(*Id*.)

Although the complaint frames the allegations primarily as a failure by Passarelli to supervise Curl, even if Passarelli had no such duty in her role as a co-employee with Curl (which remains to be established), she would undoubtedly have had a duty of care to M.M. *See Estate of Olsen v. Fairfield City Sch. Dist. Bd. of Educ.*, 341 F. Supp. 3d 793, 811 (S.D. Ohio 2018) (generally, with respect to watching over the children in their care, school officials "are bound only under the common law to exercise that care necessary to avoid reasonably foreseeable injuries[]" (citations omitted)). In fact, Myers alleges in the complaint that "[d]efendant Passarelli

17

was responsible for supervising both the students and [d]efendant Curl while class was in session." (Doc. No. 1 ¶ 17.) This allegation is incorporated into the seventh claim (*see id.* ¶ 95), where Myers additionally alleges as follows:

> 102. Based on Defendant Curl's prior conduct toward M.M., which was reprehensible and extreme, . . . there was a great probability that [d]efendant Curl would further mistreat and abuse M.M. and cause him substantial harm.
>
> 103. By failing to supervise . . . [d]efendant Curl after her repeated mistreatment and abuse of M.M., [d]efendant[] . . . Passarelli wantonly and recklessly disregarded the great probability of substantial harm that would befall M.M. and other students as a result of [her] inaction.

(*Id*. ¶¶ 102–03.) At this juncture, the complaint can (and must) be construed as a failure in Passarelli's duty to M.M. due to Passarelli's allegedly "wanton and reckless" conduct—*i.e.* leaving M.M. unsupervised with Curl, given Passarelli's knowledge of Curl's alleged prior physical and verbal conduct toward M.M.

Passarelli argues that Myers "[has] . . . not alleged facts sufficient to claim Ms. Passarelli knew, let alone demonstrated 'perverse indifference' to a dangerous situation that Curl created merely by being left in the room with students." (Doc. No. 22, at 8 (quoting *Roszman v. Sammett*, 269 N.E.2d 420, 423 (Ohio 1971).) But "Ohio is a notice-pleading state[,] . . . mean[ing] that outside of a few specific circumstances, such as claims involving fraud or mistake, . . . a party will not be expected to plead a claim with particularity." *Maternal Grandmother*, 193 N.E.3d at 539 (internal citations omitted). In *Maternal Grandmother*, the Ohio Supreme Court explicitly held that the requirement "that 'something more' than negligence be *proved*" does not "result[] in a heightened *pleading* standard in a case involving [Ohio Rev. Code §] 2744.03(A)(6)(b)'s exception to immunity for wanton or reckless behavior." *Id*. (emphases added).

Here, although it is a close call, under the facts alleged in the complaint, there are sufficient facts to survive a Rule 12(c) motion.

Accordingly, as to the Board's unopposed motion for judgment on the pleadings on claim seven, the motion is granted. As to Passarelli's motion for judgment on the pleadings on that same claim, the motion is denied.

## IV. Conclusion

For the reasons set forth herein, the Rule 12(c) motion for judgment on the pleadings filed by defendant Boardman Local School District Board (Doc. No. 23) is granted and all remaining claims against the Board are dismissed, as are, by extension, any possible claims against Passarelli and Curl in their official capacities. The Rule 12(c) motion for judgment on the pleadings filed by defendant Patricia Passarelli in her individual capacity (Doc. No. 22) is granted in part and denied in part.

In summary, as a result of this ruling, coupled with the ruling of July 11, 2022, the following claims for relief are dismissed:

(1) **Excessive Force/Unlawful Seizure** in violation of Fourth Amendment against all defendants (§ 1983 claim);

(3) **Denial of Equal Protection** in violation of the Fourteenth Amendment against all defendants (§ 1983 claim);

(4) **Failure to Train and Supervise and for Unconstitutional Customs, Policies, and Practices Causing Constitutional Violations** against defendant Boardman Local School District Board of Education (§ 1983 claim); and

(7) **Wanton and Reckless Hiring, Retention, and Supervision** against defendant Boardman Local School District Board of Education, and **Wanton and Reckless Hiring and Retention** (only) against Patricia Passarelli (state law claim).

Also as a result of this ruling, coupled with the ruling of July 11, 2022, the following claims for relief will proceed:

(2) **Denial of substantive due process** in violation of Fourteenth Amendment against defendants Patricia Passarelli and Kieran Curl in their individual capacities (§ 1983 claim);[9]

(5) **Assault/Battery** against defendant Kieran Curl (state law claim);

(6) **Intentional infliction of emotional distress** against defendant Kieran Curl (state law claim); and

(7) **Wanton and Reckless Supervision** (only) against defendant Patricia Passarelli (state law claim).

The Court will, by separate order, schedule the Case Management Conference.

**IT IS SO ORDERED**.

Dated: November 28, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[9] With respect to the second claim for relief, the Court acknowledges Myers' allegation that, because Curl and Passarelli were acting under color of law and within the scope of their employment and duties as employees of the Board, "pursuant to Ohio Revised Code § 2744.07, [the Board] must indemnify [d]efendants Curl and Passarelli for their conduct . . . ." (Doc. No. 1 ¶ 68.) Whether or not that is true is immaterial, since any right to indemnification for Curl and Passarelli is not *Myers' right* to assert. *Ayers v. Cleveland*, 156 N.E.2d 848, 853–54 (Ohio 2020) ("indemnification is a personal right rather than a right that may be enforced by a third party[]") (citing *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 256 (Ohio 1987)). Nor does this mere assertion by Myers serve as a vehicle for bringing the Board back into the lawsuit. To be clear, the Board is entirely dismissed. That said, no ruling here shall be construed as expressing any opinion of this Court with respect to applicability of indemnification, nor does any ruling by this Court serve as an obstacle to Curl's and/or Passarelli's pursuit of an indemnification claim in state court, should that become necessary. Any such claim—a purely state law claim—is for another day and another court.

Also, no one has yet challenged the second claim on its merits, although the Board made a related argument with respect to claim *four*. (*See* Doc. No. 23, at 16–17). But to be clear, the time for any such challenge on the pleadings has now passed in this already-one-year-old case and the remaining parties have relinquished any opportunity to do so prior to summary judgment practice. The Court will not entertain any more "rolling" Rule 12 motions.